UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                              Case Nos.:   3:09cr94/MCR/CJK
                                                             3:13cv526/MCR/CJK

YOBA FALCON
_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant Yoba Falcon's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, the Government's response thereto, and the separately filed affidavit by Defendant's former trial counsel.  (ECF Nos. 171, 187, 189).  Defendant elected not to file a reply to the Government's response, although he was afforded the opportunity to do so.  (ECF No. 190).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant Yoba Falcon was charged in a second superseding indictment dated January 19, 2010 with one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 and eight substantive counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  (ECF No. 58).  The charges stemmed from a scheme involving the purchase of eight town homes located in Destin, Florida.  Co-defendants Jose Esteves, Jennifer Falcon and Art Castillo were also charged in Count One, and Esteves and Falcon were each charged in four of the substantive counts of mail fraud.

Pursuant to a written plea agreement, Mr. Falcon entered a plea of guilty to Counts One and Two of the second superseding indictment on February 18, 2010 before Magistrate Judge Elizabeth Timothy.  (ECF Nos. 87–91, 93).   The plea agreement provided that Mr. Falcon faced up to five years imprisonment on Count One and up to twenty years imprisonment on Count Two, as well as a possible fine of up to $250,000 and restitution.  (ECF No. 89).  The agreement provided that any prediction of the sentence to be imposed was neither a guarantee nor a binding promise because of the variety and complexity of issues that could arise at sentencing, thus rendering the sentence impossible to accurately predict.  (ECF No. 89 at 6).

The Presentence Investigation Report calculated Mr. Falcon's base offense level at 7.  (ECF No. 117, PSR ¶ 40).  The PSR writer calculated an 18 level adjustment due to the amount of loss, a two level adjustment because the offense used "sophisticated means," and a four level adjustment due to Falcon's leadership role in the offense.  (ECF NO. 117, PSR ¶¶ 31, 41, 42, 44).  After a three level favorable adjustment for acceptance of responsibility, the total offense level became 28.  (ECF No. 47, 50).  Mr. Falcon's criminal history category was III, resulting in an applicable advisory guidelines range of 97 to 121 months.

At sentencing, counsel objected to the amount of loss, as well as the adjustments for Falcon's role in the offense and his use of sophisticated means.  The court overruled each of the objections in turn.  (ECF No. 145 at 5–38).  The court sentenced Falcon to 60 months imprisonment on Count One and a concurrent term of 100 months imprisonment on Count Two.  The court also ordered that Falcon pay restitution in the amount of $229,785.80. (ECF No. 124 at 2; ECF No. 145 at 47–48).

Mr. Falcon timely appealed, challenging the trial court's loss calculations under the Sentencing Guidelines.  (ECF Nos. 189-1, 189-2 (Briefs of Appellant and Appellee)).  The Eleventh Circuit affirmed the district court's determination (ECF

No. 155), and the Supreme Court denied certiorari on October 4, 2012.  (ECF No. 157).

In the present motion, Mr. Falcon divides his claims into five grounds for relief, each alleging constitutionally ineffective representation by trial or appellate counsel or both.  The Government opposes the motion in its entirety.

## STATEMENT OF FACTS[1]

Mr. Falcon and co-defendant Art Castillo traveled from California to Florida where Falcon contacted a real estate agent for assistance in locating residential properties that could be purchased by out of state investors Mr. Falcon claimed to represent.  Mr. Castillo rented mailboxes in his name at two different UPS stores, which boxes were used as fraudulent employment addresses on residential loan applications by Jose M. Esteves, and Jennifer Enid Falcon, Mr. Falcon's sister.  Mr. Falcon orchestrated the purchase of eight properties in the Diamond Lake town home complex in Destin, Florida.  These purchases involved a cash back scheme to benefit petitioner.  Each town home received 100% financing and they sold for a minimum of $340,000.  In order to secure financing for the purchase of the eight properties, Ms. Falcon and Mr. Esteves submitted uniform residential loan applications containing

---

[1]The Statement of Facts is taken primarily from the unobjected to facts in the PSR.  (ECF No. 117, PSR ¶¶ 8–26).

Case Nos.:   3:09cr94/MCR/CJK; 3:13cv526/MCR/CJK

materially false statements pertaining to their employers and employment, duration of employment, monthly income, current residence, and intent to occupy each of the purchased town homes as their primary residences.  Loan proceeds totaling $542,000 (over the amounts due the sellers) were disbursed at closing into the checking account of a company known as "Pacific Associated Business Services," co-owned by Defendant Falcon.  Ms. Falcon and Mr. Esteves defaulted on the loans and the properties went into foreclosure.  Both Defendant and Ms. Falcon were charged in Counts Two through Five, which pertained to the four properties purchased by Ms. Falcon.  Mr. Falcon and Mr. Esteves were charged in Counts Six through Nine, which corresponded to the four properties purchased by Esteves.

In addition to the eight properties upon which the conspirators closed, Falcon pursued the purchase of six additional properties in the Diamond Lakes development with a total sales price of $2,050,000.  These contracts did not close.  Jennifer Falcon and Edna Lopez (the mother of Defendant and Jennifer Falcon) were the purported purchasers of three parcels each.  Mr. Falcon also arranged purchase agreements for ten residential properties in the Windswept Estates development in Walton County, with sales prices ranging from $429,900 to $568,600 and totaling $4,773.950.  The

purported investors were individuals that he had recruited, including Jose Esteves and his sister Jennifer Falcon.  None of the Windswept Estates properties closed.

The mail fraud stemmed from the use of Federal Express to transfer envelopes relating to the purchase, financing and transfer of title for the real estate.  The loss calculation for Guidelines purposes was based upon the sale price of the eight Diamond Lakes properties that closed ($2,730,000), the properties in the Diamond Lakes development that did not close ($2,050,000), and the ten properties in the Windswept Estates development for which there were signed purchase agreements ($5,303,850).  The gross figure of intended loss for Guidelines purpose totaled $10,083,85.  This amount was reduced by utilizing a 53% reduction for all the properties, based on the averaged return at foreclosure sales of five of the parcels.  The total loss attributed to Mr. Falcon was $4,739,409.50.

## LEGAL ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its

jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*,

373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  *Lynn*, 365 F.3d at 1232 n.14 (*quoting Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."  *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own

conduct." *Lynn*, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). *Strickland*'s two part test also applies to guilty pleas.  *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (*citing Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (*quoting Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  *Strickland*, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.  When reviewing the performance of an experienced trial counsel,

the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (*quoting Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (*quoting Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish

prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears

to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).  The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).  Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.  A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*,786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).  Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.  *Gordon*, 518 F.3d at 1301 (*citing Vick v.*

*United States*, 730 F.2d 707, 708 (11th Cir. 1984)).  To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.  *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  *See Winthrop–Redin v. United States*, 767 F .3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are ... based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).  Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.  Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Procedural Bar

The Government argues that Defendant's motion must be denied because the same errors he raised on appeal are renewed in the instant motion, and as such they are procedurally barred.  (ECF No. 189).  Mr. Falcon asserted on appeal that the district court erred in calculating the loss because it did not apply a credit against loss regarding the 16 properties for which he cancelled the purchase agreements before

the fraud was detected.  (ECF No. 155 at 2).  Additionally, he claimed that the correct

loss calculation should have been zero.  Because these issues had not been raised

before the district court, the appellate court's review was for plain error.

The Eleventh Circuit noted that under the Sentencing Guidelines, a defendant

may be held accountable for all "offense conduct" without being limited to conduct

giving rise to the particular crimes charged in the indictment.  (ECF No. 155 at 3,

*citing United States v. Fuentes*, 107 F.3d 1515, 1522 (11th Cir. 1997)).  The court

cited § 1B1.3(a)(2) of the Guidelines, noting that certain relevant conduct, i.e. any

acts and omissions that are part of the same course of conduct or scheme, must be

considered at sentencing.  (ECF No. 155 at 3, *citing United States v. Maxwell*, 34

F.3d 1006, 1010 (11th Cir. 1994); *see also* ECF No. 117, PSR at ¶ 31).

The appellate court went on to note the guidelines definitions of "actual loss"

("the reasonably foreseeable pecuniary harm that resulted from the offense") and

"intended loss" ("the pecuniary harm that was intended to result from the offense"),

and stated that "[p]roof that the defendant intentionally induced a bank to

unknowingly subject itself to the risk of default is sufficient to establish that the

defendant intended to cause a loss."  (ECF No. 155 at 4, *quoting United States v.*

*Menichino*, 989 F.32d 438, 442 (11th Cir. 1993)).  The Eleventh Circuit also

acknowledged that the Sentencing Guidelines provided that the loss amount should be reduced by the money returned or the fair market value of any property returned to the victim before the offense was detected.  In this case, Defendant did not preserve the argument involving credit against an intended loss and the court's review was for plain error.  The appellate court found that "the cancellation of the 16 purchase agreements involved neither the return of money or property nor an initial loss, and because (Defendant) cited no binding case law holding that the failure of the 16 transactions to close was the equivalent of the Guidelines' credit for money or property returned," the district court did not commit plain error in including this in the loss amount.  (ECF No. 155 at 5).

With respect to the second allegation of error, the appellate court found that Falcon had invited any error regarding his argument that the loss amount was actually zero when he acknowledged to the district court that the loss amount was either $1,441,600 or $1.7 million.  (ECF No. 155 at 5–6).  Even absent the invitation of error, the court held that the district court did not plainly err by including in the loss amount the loans obtained for the eight properties that closed absent any explicit Guidelines language or controlling precedent to the contrary. (ECF No. 155 at 6). The court thus affirmed Defendant's sentence.

Case Nos.:   3:09cr94/MCR/CJK; 3:13cv526/MCR/CJK

The Eleventh Circuit has previously held that "when a claim of ineffective assistance is based on a failure to object to an error committed by the district court, that underlying error must at least satisfy the standard for prejudice that we employ in our review for plain error." *Gordon v. United States*, 518 F.3d 1291 (11th Cir. 2008).  Otherwise, "[i]t would be non-sensical if a petitioner, on collateral review, could subject his challenge of an unobjected to error to a lesser burden by articulating it as a claim of ineffective assistance [of counsel]." *Gordon*, 518 F.3d at 1298.  Thus, the Government maintains that because the Eleventh Circuit found no plain error on direct appeal, Mr. Falcon cannot prevail on a claim of ineffective assistance of counsel under *Strickland*.   The undersigned agrees that the claims raised in the first four grounds–each concerning calculation of loss– are barred by the appellate court's rejection of plain error.  In any event, the motion also fails on the merits.

Ground One

Defendant first claims that trial counsel rendered ineffective assistance of counsel by failing to distinguish between "actual" and "intended" loss, and by attributing the requirement of reasonable foreseeability to both categories of loss when it really only applies to actual loss.  In turn, he claims, counsel's actions "led the trial court to believe that reasonable foreseeability was a component of intended

loss and discredited the argument as to whether sufficient intent existed to warrant a finding of intended loss." (*See* ECF No. 171 at 10).  Mr. Falcon argues that it was not he that caused the losses to the banks, but rather the extenuating circumstances of a national real estate crash.  He insists that his goal had never been to defraud, but to make a genuine real estate investment with a much greater promise of return by resale.  (ECF No. 171 at 11, 13).  As noted by the Government, Mr. Falcon's argument fails to acknowledge that his actions were not a mere misstatement of his assets or a misstatement of the "straw buyers'" employment and residential history, income and intent to occupy the properties as primary residences.  Rather, the evidence supported the court's finding that Mr. Falcon engaged in a scheme to knowingly defraud mortgage lenders to obtain investment properties that he could "flip" after obtaining full financing for which he received kick-backs.  As a result, the court accepted the Government's argument at sentencing that Falcon's actions supported the finding that he should be held accountable not only for the properties that successfully closed, but also for the ones that did not ultimately close.

As the Eleventh Circuit stated in its review of this case on appeal, "[p]roof that a defendant intentionally induced a bank to unknowingly subject itself to the risk of default is sufficient to establish that the defendant intended to cause a loss."  (ECF

No. 155 at 4, *citing United States v. Menichino*, 989 F.2d 438, 442 (11th Cir. 1993) (citation omitted)); *see also United States v. Surges*, 424 F. App'x 834, 837 (11th Cir. 2011). Sentencing based on intended loss is appropriate, even where no actual loss occurred. *Menichino*, 989 F.2d at 442 (cited in *United States v. Greene*, 279 F. App'x 902, 908 (11th Cir. 2008)). Regardless of whether a purchase is culminated, actions such as preparing a fraudulent contract using false documentation in support of a buyer's income and setting a closing date may be considered sufficient substantial steps to apply "intended" rather than "actual" loss. *See Greene*, 279 F. Appx at 906. By way of example, the Government has submitted a signed sales contract for the purchase of 405 Brushed Dune Circle in Windswept Estates by Jose Estevez. (ECF No. 189-5 at 12). From the purchase price of $536,400.00, the seller agreed to pay $122,940.00 to Falcon's company Pacific Business Services, from the seller's proceeds.

Falcon is not protected by the fact that some of the properties did not close. The Eleventh Circuit has held that "[w]hen a sentencing court is determining the proper punishment for a defendant's fraud, the court uses the reasonable mathematical limit of his scheme, rather than the concrete result . . . [because a] criminal pays the price of the ambition of his acts, not their thoroughness." *United*

States v. Patterson, 595 F.3d 1324, 1327 (11th Cir. 2010).  The Government argues that the amount by which the fraudulent loan exceeded what the lender would have lent on the true facts is an acceptable measure of loss.  *See United States v. Carter*, 412 F.3d 864, 869 (8th Cir. 2005) (*citing Kok v. United States*, 17 F.3d 247, 250 (8th Cir. 1994)).  In this case, it maintains, the district court correctly determined that under the circumstances, no mortgage company would have loaned any proceeds had it been aware of the myriad falsities in the loan applications.

As a final note, the argument here, although couched in terms of the calculation of intended loss, is actually a claim that Defendant had no intent to defraud at all, but, instead was pursuing a legitimate business opportunity.  Accordingly, he claims in his motion the Government failed to produce any evidence of "intention for the banks to suffer losses (and) his goal was in fact to make an genuine real estate investment with a much greater promise of return by resale."  ECF No. 171 at 11.  This avenue is barred by the guilty plea.

Accordingly, counsel was not constitutionally ineffective in his articulation of the loss standard.  The *Strickland* test is not met.

Ground Two

Defendant next claims that trial counsel miscalculated the actual loss amount for the purposes of determining the appropriate sentencing level and did not explain the elements of actual loss to the sentencing court, resulting in an 18 point increase in total offense level.  He also claims that counsel made contradictory arguments, which worked to his detriment.

> In the Sentencing Memorandum counsel had maintained that:
>
> The forecast for the real estate market was good.  Most experts opined that the market would continue to rise, while a few experts predicted that the housing market would level off, but no one predicted a complete collapse of the real estate market; not the government experts, not the banking experts and not the Wall Street experts.

(ECF No. 110 at 3).  This position was in seeming contrast to counsel's statement at sentencing that Mr. Falcon be held responsible for the losses on 8 of the 24 properties listened in the indictment, instead of none of the properties.  Defendant concedes that counsel may have been trying to present "compromise numbers that the court would accept and work with, but maintains that this strategy failed."  Falcon argues that as a result of counsel's flawed strategy, the court accepted the Government's loss amounts and imposed a much greater sentence than it would have had the loss amount been zero.

Case Nos.:   3:09cr94/MCR/CJK; 3:13cv526/MCR/CJK

Trial counsel noted in his affidavit in response to Falcon's motion that the foreseeable risk to a lender in any real estate transaction, whether genuine or fraudulent, is the risk that the borrower will default on the loan. He asks, rhetorically:

> How does one make a credible argument that the *actual loss* (the amount of the loans) was an unforeseeable loss when someone intentionally skirts the very safeguards that lender's (sic) use to protect themselves from the every danger of default that did, in fact, occur?

(ECF No. 189-6 at 4). Counsel reiterates that his argument at sentencing was that if the property values had gone up, there would have been no loss, and it was the fact that property values had gone down which was the basis for his concession that the actual loss was the amount of the loans on the eight houses that closed minus the estimated value of the properties at the time of sentencing, which would have created only a sixteen level enhancement. Counsel argued that no loss, whether actual or intended, resulted from the sales contracts on the remaining sixteen properties that never closed. Had the court accepted counsel's arguments, Defendant's guidelines calculation would have been two levels less.

The record reflects that counsel made a reasonable strategic decision. The undersigned cannot say that no reasonable attorney would have elected to forgo an argument that there was no foreseeable loss, which argument patently carried the risk of compromising counsel's credibility with the court. *Dingle*, 480 F.3d at 1099.

Counsel's strategy and arguments were not constitutionally deficient, and Defendant has not shown he is entitled to relief.

Ground Three

Falcon claims that counsel was constitutionally ineffective when he failed to "adequately challenge the Government's valuation of the underlying collateral, resulting in a potential increase in his total offense level."  Somewhat dramatically, Falcon frames his claim as a failure to reject a formula "fabricated by the Government to bloat the total loss amount."  (ECF No. 171 at 15).

The gravamen of Defendant's claim is that counsel should have objected to using the average return on only the five foreclosed properties to calculate the then-current value for all 24 properties.  The Government's calculation resulted in a 53% reduction in value from the agreed-upon sales price.  Falcon argues that trial counsel's failure to press the Government to provide individualized appraisals or other documentary substantiation of its reduction recommendation was constitutionally substandard performance.

It is not inappropriate for the district court to make an estimate as to loss amount.  *See United States v. Svete*, 521 F.3d 1302, 1317 (11th Cir. 2008), *vacated and reinstated in pertinent part*, *United States v. Svete*, 565 F.3d 1363 (11th Cir.

2009). The court's estimation of the loss need only be reasonable. *See United States v. Scott*, 440 F. App'x 772, 775 (11th Cir. 2011) (*citing United States v. Renick*, 273 F.3d 1009, 1025 (11th Cir. 2001); U.S.S.G. § 2B1.1, comment. (n.3(C))); *United States v. McDaniel*, 503 F. App'x 757, 762 (11th Cir. 2013); *United States v. Miller*, 188 F.3d 1312, 1317 (11th Cir. 1999); *United States v. Williams*, 509 F. App'x 941, 943 (11th Cir. 2013) (reliance on circumstantial evidence does not render a loss estimate unreasonable or speculative). Upon challenge, the Government bears the burden of supporting its loss calculation with "reliable and specific evidence." *Renick*, 273 F.3d at 1025 (*citing United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997); *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995); *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999)); *McDaniel*, 503 F. App'x at 762.

Application note 3(E)(iii) to U.S.S.G. § 2B1.1 provides that "in the case of a fraud involving a mortgage loan, if the collateral has not been disposed of by the time of sentencing, use the fair market value of the collateral as of the date on which the guilt of the defendant has been established." The Government states that even if trial counsel had put the Government to its burden of producing, for instance, property appraiser's records regarding the valuation of the subject properties, the outcome of

the proceedings would not have changed.  Attached to the Government's response are letters from the Okaloosa and Walton County property appraisers' offices regarding the 2009 valuation of the "unclosed" Diamond Lakes and Windswept Estates properties.  (ECF No. 189-9).  According to the letters, the value of these 16 properties was in excess of $3,500,000, well within the guidelines loss range of $2,500,000 to $7,000,000.  This information, thus, supports, and does not impeach, the loss amount reflected in the Presentence Investigation Report and adopted by the sentencing court, which led to the 18 level increase.  (ECF No. 117, PSR ¶ 41).  Thus, even assuming, only for these purposes, that the first Strickland prong could be met, the outcome of the proceedings would not have changed had he done so.  Because Defendant cannot show prejudice, he is not entitled to relief.

Ground Four

Mr. Falcon next maintains that counsel was constitutionally ineffective because he did not cite the "credit on loss provision" of the Sentencing Guidelines, resulting in a two point increase in his total offense level.  The credit on loss provision was discussed on appeal.  The Eleventh Circuit stated:

Falcon did not fairly preserve in the district court the particular argument involving the credit against an intended loss.  Thus, we review for plain error.  Because the cancellation of the 16 purchase agreements involved neither the return of property or money nor an initial loss, and

because Falcon cites no binding case law holding that the failure of the
16 transactions to close is the equivalent of the Guidelines' credit for
money or properly (sic) returned, we conclude that the district court did
not commit plain error.

(ECF No. 155 at 5).

The PSR includes reference to the "credit against loss" provision of
Application Note § 3(E)(ii) to § 2B1.1 in reference to the loss calculation.  This
provision provides that loss amount should be reduced by the following: "in a case
involving collateral pledged or otherwise provided by the defendant, the amount the
victim has recovered at the time of sentencing from the disposition of the collateral,
or if the collateral has not been disposed of by that time, the fair market value of the
collateral at the time of sentencing."  (ECF No. 117, PSR ¶ 9).  Falcon's trial counsel
admits after reviewing the transcript of Mr. Falcon's sentencing hearing that his
argument "could have been made clearer," but continues by noting that no case law
exists to support the proposed argument.  As noted above, the Eleventh Circuit also
noted the lack of binding case law supporting Falcon's argument on appeal which
buttressed its finding that the district court did not commit plain error.  (ECF No. 155
at 5).  Indeed, the appellate court's conclusion that cancellation of purchase contracts
is not tantamount to return of property or money comports with a common sense
understanding of the credit against loss provision.  Accordingly, Mr. Falcon has not

shown that no reasonable counsel would have acted as his attorney did.  Counsel was not constitutionally ineffective, and Defendant is not entitled to relief.

<u>Ground Five</u>

Falcon's final ground for relief posits that trial counsel failed to adequately challenge the assessment for his role in the offense, and that appellate counsel failed to pursue this issue on appeal.  This argument concerns the trial court's finding that Falcon was an organizer or leader of a particularly described criminal activity.

Section 3B1.1(a) of the Sentencing Guidelines provides that if a defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."  Lesser adjustments are appropriate for individuals who are managers or supervisors of criminal activity involving five or more participants or that are otherwise extensive (3 levels), or for individuals who are organizers, leader, managers or supervisors in any criminal activity (2 levels).  U.S.S.G. § 3B1.1(b) and (c).  The commentary provides that a "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted.  U.S.S.G. § 3B1.1, comment. (n.1).

At sentencing, the Government presented the testimony of Agent Harker regarding the number of participants in the offense conduct in this case.  After hearing Harker's testimony, the court stated:

> As to the role adjustment, I would find at this time Mr. Falcon was an organizer, leader of the criminal activity that involved five or more participants, based on Agent Harker's testimony just now.  It is a conclusion that I reach easily, based on all the circumstances outlined by Agent Harker as well as those in the Presentence Investigation Report by a preponderance of the evidence.  There were a minimum of five participants and knowing participants.

(ECF No. 145 at 35–36).  The court then identified the participants as Ms. Eugenia Perez or "Kenny", Reinaldo Ochoa, Jose Esteves, Jennifer Falcon, Art Castillo, Ms. Rivera and Enid Lopez.  Mr. Falcon acknowledges the testimony of Agent Harker, but faults counsel for not "hold[ing] the Government to its burden of proving by adequate evidence that each of the purported participants was indeed criminally responsible given that Falcon was conducting a legitimate and legal real estate and brokerage company."  (ECF No. 171 at 22).

Trial counsel notes that he initially argued the Government failed to prove the enhancement, because no evidence appeared to establish that Jennifer Falcon or Enid Lopez were participants, and without these individuals the four level enhancement would have been unsupported.  However, counsel noted that once the court decided

to hear evidence in the form of Agent Harker's testimony, the point became moot because, in accordance with the discovery provided by the Government, it could identify five participants, even without Ms. Falcon and Ms. Lopez.  (ECF No. 189-6 at 6).

To the extent Defendant suggests that counsel should have requested a continuance to develop a proper cross-examination of FBI Agent Harker, he has not shown constitutionally deficient performance.  First, there is no guarantee that such a request would have been granted.   Second, counsel's affidavit reveals he was already well-apprised of the substance of Agent Harker's testimony concerning the participants.   Defendant's suggestion that reliance on Agent Harker's "hearsay" testimony about the involvement of Ms. Falcon, Ms. Lopez, Ms. Perez, and Mr. Ochoa lacks basis.  The law in the Eleventh Circuit is well-established that the district court can consider reliable hearsay statements at sentencing.  *United States v. Patti*, 337 F.3d 1317, 1326 (11th Cir. 2003) (*citing United States v. Wilson*, 183 F.3d 1291, 1301 (11th Cir. 1999) ("A court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the information is sufficiently reliable.")).

Mr. Falcon additionally suggests that the sentencing court did not reach the issue of whether the criminal activity was "otherwise extensive" after determining that five or more participants were involved. Even if counsel had successfully argued that there were not five or more participants in the criminal activity, the guidelines commentary suggests that the court could have found the same adjustment to apply. Application note 3 provides that in assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. The application note specifically provides that "a fraud that involved only three participants but used the unknowing service of many outsiders could be considered extensive." U.S.S.G. § 3B1.1, comment. (n. 3). Considering the number and complexity of the transactions, the evidence here would have amply supported the alternative analysis.

Defendant did not have a viable factual or legal argument against the application of the enhancement. Trial counsel was not constitutionally ineffective for failing to further pursue this claim. Likewise, appellate counsel was not constitutionally ineffective for his failure to raise a meritless issue on appeal. *See Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1311 (11th Cir. 2008); *Ladd v.*

*Jones*, 864 F.2d 108, 110 (11th Cir.1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

Mr. Falcon has not shown that he is entitled to relief.

<u>Conclusion</u>

For all of the foregoing reasons, the court finds that Defendant Falcon has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore the pending § 2255 motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (ECF No. 171) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 16th day of June, 2016.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# NOTICE TO THE PARTIES

   **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.